1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  HOLCOMB,                          No.  2:15-cv-02154-KJM-CKD

12            Plaintiff,

13       v.                           ORDER

14  CALIFORNIA BOARD OF
    PSYCHOLOGY, et al.,
15
            Defendants.
16

17

18          This matter is before the court on plaintiff Peggy Holcomb's Motion for

19  Temporary Restraining Order barring the California Board of Psychology from continuing to

20  withhold her license to practice psychology.  ECF No. 21.  As explained below, the court

21  DENIES plaintiff's motion.

22  I.       BACKGROUND

23       A.       Licensing Background

24          The following facts are based on a review of the unverified Complaint, ECF No. 1,

25  plaintiff's declaration, Holcomb Decl., ECF No. 21-2, and plaintiff's Motion for a Temporary

26  Restraining Order and Brief in support thereof, ECF Nos. 21 & 21-1, and given the state of the

27

28
                                 1

1    record give plaintiff the benefit of the doubt as to certain facts.[1]  Plaintiff earned a Master's of

2    Science in Psychology from California State University Sacramento in January 1999.  Compl.

3    ¶ 8, ECF No. 1 ("Compl."); ECF No. 21-1 at 2.  She became a Licensed Educational Psychologist

4    (LEP) in California on July 1, 2002, license Number 2586.  Compl. ¶¶ 9, 18; ECF No. 21-1 at 2.

5    An LEP is a master's degree license under the authority of the Board of Behavioral Sciences.

6    ECF No. 21-1 at 2.  Plaintiff worked as a school psychologist at the San Juan School District

7    from 2000 until June 2012, eventually serving as the lead school psychologist for the autism team

8    in the district.  Compl. ¶ 8.  Plaintiff then worked at the Twin Rivers School District from

9    October 2013 until November 2014.  *Id.*  The complaint alleges that in the time plaintiff worked

10   as an educational psychologist, she conducted approximately 4,500 evaluations and never had any

11   adverse action taken against her.  *Id.* ¶¶ 9, 18.  Plaintiff's declaration says she has evaluated more

12   than 2,500 children.  Holcomb Decl. ¶ 3, ECF No. 21-2.  She also avers she is the "only school

13   psychologist in the nation who participated in the DSM5."  *Id.*  Through her work, plaintiff often

14   testified against Alta Regional Center in proceedings that resulted in rulings ordering Alta to

15   provide educational services for a particular student with disabilities. Compl. ¶¶ 11, 16; Holcomb

16   Decl. ¶ 5, ECF No. 21-2.

17           Plaintiff decided to pursue a doctoral degree and license of psychology, which is

18   under the authority of the California Board of Psychology (BOP).  *See* ECF No. 21-1 at 2.  An

19   applicant must fulfill a number of requirements to become eligible for BOP  licensure as a

20   psychologist.  *See* Cal. Bus. & Prof. Code § 2914, *et seq.*  Plaintiff completed her pre-doctoral

21   hours in July 2011, and completed her post-doctoral hours in May 2013.  Compl. ¶ 28.  She

22   earned a doctoral degree in Clinical Psychology from the Fielding Institute of Graduate Studies in

23   June 2013.  ECF No. 21-1 at 4.  She eventually met the education, experience, fingerprint and

24   pre-licensure coursework requirements for licensure.  *See* Ex. E, ECF No. 1-2; Holcomb Decl.

---

[1] Given the procedural history of this case so far, and the state of the current filings, it appears to the court that plaintiff's counsel, despite the credentials he holds out, is not familiar with the requirements imposed by the Federal Rules of Civil Procedure, this court's Local Rules, and federal law generally with respect to temporary injunctive relief.  He may wish to consult with counsel who has the expected familiarity if he proceeds with litigation of this case.

¶ 9, ECF No. 21-2.  On July 1, 2013, plaintiff filed an application for licensure with the BOP.

Compl. ¶ 27.  Plaintiff passed the Examination for Professional Practice in Psychology (EPPP) on

July 27, 2014.  *Id.* ¶ 28; Holcomb Decl. ¶ 9, ECF No. 21-2.  She took the California Psychology

Law and Ethics Exam (CPLEE) on July 6, 2015, Compl. ¶ 33, and was told she had received a

passing score on August 3, 2015, Holcomb Decl. ¶¶ 9-10, ECF No. 21-2; ECF No. 21-1 at 5.

On August 6, 2015, Audrey Watkins, an employee of the BOP, informed plaintiff

that her license was ready and that she could pick it up from the BOP office.  Compl. ¶ 25.  Ms.

Watkins told plaintiff she would print the actual license, but then told plaintiff she could not find

the passing score on the California exam.  *Id.*; Holcomb Decl. ¶ 10, ECF No. 21-2.

B.      Denial of License

In or about July 2015, Cynthia Root, Ph.D., a psychologist employed by Alta

Regional Center, obtained two reports prepared by plaintiff on patient John Doe, a minor.  *See*

Compl. ¶ 14; *see also* Ex. A, ECF No. 1-2.  Based on the reports, Dr. Root filed a complaint with

the California Board of Behavioral Sciences against plaintiff.  Compl. ¶¶ 12–13; *see* Ex. A, ECF

No. 1-2.  The case before the Board of Behavioral Sciences is currently pending.  *See* ECF No.

21-1 at 7.  According to plaintiff, Dr. Root alleged the following:

1)   Dr. Holcomb acted outside the scope of her license in conducting an evaluation of patient Doe;

2)   The evaluation was inappropriate because Dr. Holcomb used DSM5 coding;

3)   The evaluation was somehow not proper because it was somehow not about the educational needs of the patient;

4)   Dr. Holcomb inaccurately represented her credentials in the reports; and

5)   There is a question why Dr. Holcomb provided two reports in four months to Alta Regional Center.

Compl. ¶ 12; *see* Ex. A, ECF No. 1-2.  Plaintiff asserts that Licensed Educational Psychologists,

such as herself, have the authority to conduct psychometric testing and to use DSM5 diagnoses.

Compl. ¶ 43.  Plaintiff alleges that Dr. Root maliciously filed the complaint "as part of a

3

1   conspiracy by Alta Regional Center, Dr. Root and others to silence Dr. Holcomb and her

2   advocacy for educational services for those children suffering from Autism."  *Id.* ¶ 16.

3           At some point, Cynthia Root and Alta Regional Center sent the two reports

4   prepared by plaintiff on patient John Doe to the BOP, in violation of HIPAA.  *Id.* ¶¶ 14, 37; ECF

5   No. 21-1 at 6.  Without any notice or opportunity to respond, the BOP sent plaintiff's file from its

6   licensing department to its enforcement department and concluded that her application should be

7   denied.  Compl. ¶¶ 37, 41.  On August 27, 2015, the BOP's Enforcement Program Manager,

8   Sandra Monterrubio, sent plaintiff a letter denying her application for licensure as a psychologist,

9   with reference to California Business and Professions Code "section 489(3)(A)."[2]  *Id.* ¶ 38; ECF

10  No. 21-1 at 6.  The letter offered plaintiff a hearing under California Government Code section

11  11500, *et seq.*  *See* Compl. ¶ 38; ECF No. 21-1 at 6.  Plaintiff asserts that Ms. Monterrubio

12  misinterpreted the law by offering plaintiff the hearing procedures for an applicant, rather than

13  those required for individuals who already have a license.  Compl. ¶¶ 38–43.

14          Plaintiff further alleges that plaintiff's counsel received a threatening e-mail from a

15  special investigator for the BOP on or around October 9, 2015, which interfered with plaintiff's

16  Sixth Amendment right to counsel.  *Id.* ¶¶ 81–85; ECF No. 21-1 at 7.

17      C.      Irreparable Harm

18          On November 25, 2014, plaintiff entered into a contract with the state of California

19  to perform services in the Department of Juvenile Justice, which is a part of the California

20  Department of Corrections and Rehabilitation.  Holcomb Decl. ¶ 12, ECF No. 21-2.  One

21  condition of the contract was that plaintiff would become fully licensed as a psychologist within

22  one year, by November 25, 2015.  *Id.*  Plaintiff claims absent a temporary restraining order, she

23  will lose her job and will be unable to find other employment due to her age.  *See* ECF No. 21-1

24  at 12; Compl. ¶ 93.  As a result, she will be unable to pay for the necessities of life, because she is

25  the sole provider for her family; her husband is disabled and she supports her daughter and

26  provides financial support for grandchildren.  *See* Holcomb Decl. ¶ 12*;* ECF No. 21-1 at 2, 11–

27  _____

28      [2] As noted below, there is no such section of the Business and Professions Code.

4

15.  The motion briefing also argues she will suffer emotional harm, reputational damages, and injuries to her health, including from the release of Cortisol in the bloodstream.  ECF No. 21-1 at 12.  Her declaration does not reference Cortisol.

D.    Procedural History

On October 14, 2015, plaintiff filed a complaint requesting declaratory relief, the return of the files for John Doe to the parents, a temporary restraining order restraining the BOP from withholding plaintiff's license, an order taking the BOP into federal receivership, damages, costs, and attorneys' fees.  ECF No. 1.  The complaint asserts seven causes of action: violation of procedural due process based on 42 U.S.C. § 1983; age discrimination based on § 1983; violation of substantive due process based on § 1983; violation of right to association under the First Amendment; conspiracy to violate plaintiff's rights; intentional infliction of emotional distress; and interference with right to counsel under the Sixth Amendment.  *Id.*

On October 16, 2015, plaintiff filed a motion for temporary restraining order and preliminary injunction.  ECF No. 4.  On October 19, 2015, the court denied plaintiff's motion without prejudice for failure to provide the required documents in compliance with Local Rule 231(c).  ECF No. 7.  On November 6, 2015, plaintiff moved ex parte for an order that service of process be effected by a United States marshal, ECF No. 9, which the court granted on November 10, 2015, ECF No. 12.

On November 13, 2015, plaintiff again moved ex parte for a temporary restraining order.  ECF No. 13.  On November 17, 2015, the court again denied plaintiff's motion for failure to provide the required supporting documents.  ECF No. 17.  The court ordered that any renewed motion for temporary restraining order be filed no later than close of business on November 19, 2015, and include the required supporting documents.  *Id.*  On November 19, 2015, plaintiff filed the renewed motion for temporary restraining order that is before the court.  ECF No. 21.  Plaintiff and plaintiff's counsel each now have submitted a declaration in support of the motion.  ECF Nos. 21-2, 21-3.  The motion appears to seek an order restraining the BOP from withholding plaintiff's psychology license, which she contends she has effectively obtained.

1   II.      LEGAL STANDARD

2          Because plaintiff seeks a temporary restraining order against the BOP, the court

3   analyzes her request as such, although it is unclear that a temporary restraining order is actually

4   the relief plaintiff requires – as opposed to a writ or some other form of order -- even if she were

5   to prevail.

6          A temporary restraining order may be issued upon a showing "that immediate and

7   irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

8   in opposition." Fed. R. Civ. P. 65(b)(1)(A).  In determining whether to issue a temporary

9   restraining order, a court applies the factors that guide the evaluation of a request for preliminary

10  injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer

11  irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor,

12  and . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555

13  U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

14  (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary

15  injunctions is "substantially identical").  The Supreme Court has characterized injunctive relief

16  "as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

17  entitled to such relief." *Winter*, 555 U.S. at 22.

18  III.     DISCUSSION

19         A.      Irreparable Harm

20         Plaintiff contends she will suffer irreparable harm if the temporary restraining

21  order is not granted because she will lose her job at the California Department of Juvenile Justice

22  if she does not receive her license to practice psychology by November 25, 2015.  Holcomb Decl.

23  ¶ 12, ECF No. 21-2; ECF No. 21-1 at 11–15.  As noted, plaintiff alleges she is the sole provider

24  for her family, and would not be able to find alternative employment due to her age. *See* Compl.

25  ¶ 93; ECF No. 21-1 at 2, 14.  As a result, if the court does not issue a temporary restraining order,

26  plaintiff's brief argues she would be unable to pay for the necessities of life and may become

27  homeless.  ECF No. 21-1 at 12, 14.

28

6

1          Although the economic harm plaintiff alleges is severe, she has not provided

2  factual support showing a likelihood that it will occur.  *See Winter*, 555 U.S. at 22 (irreparable

3  injury must be likely in the absence of an injunction).  Plaintiff's complaint alleges she would be

4  unable to find alternative employment because she is fifty years old, Compl. ¶ 93, but she is a

5  Licensed Educational Psychologist with extensive experience and prior to her current job enjoyed

6  employment as a school psychologist at the Twin Rivers School District from October 2013 until

7  November 2014, *see id.* ¶ 8.  Nothing before the court supports the conclusion that plaintiff is

8  being blackballed such that, despite the credentials she presents, she has been rendered

9  unemployable. Additionally, plaintiff's brief describes her expenses but neither it nor her

10  declaration provides specific financial information showing that plaintiff would be unable to pay

11  for the necessities of life before obtaining alternative employment.  *See* ECF No. 21-1 at 14.

12  Without such a showing, the court cannot conclude any harm plaintiff would suffer could not be

13  compensated through monetary damages.  *Cf. Sampson v. Murray*, 415 U.S. 61, 90, 92 n.68

14  (1974) (holding plaintiff's discharge from governmental job does not constitute irreparable harm,

15  and explaining "the temporary loss of income, ultimately to be recovered, does not usually

16  constitute irreparable injury").  Plaintiff's brief itself cites case law holding that a plaintiff must

17  demonstrate that the injury is actual and imminent, rather than remote or speculative.  ECF No.

18  21-1 at 15–16.  The court finds plaintiff has not shown she likely will suffer actual, imminent

19  irreparable harm as a result of the loss of income.

20          Plaintiff likewise provides no factual support showing she is likely to suffer

21  irreparable reputational or emotional harm.  *Cf. Sampson*, 415 U.S. at 91 (holding humiliation and

22  reputational damage caused by discharge from job do not constitute irreparable harm).  Her

23  declaration makes only a very general statement that she is "utterly devastated" by the recent turn

24  of events.  Holcomb Decl. ¶ 12, ECF No. 21-2.  Her brief is no more detailed, and despite the

25  court's warning in its previous order, plaintiff's counsel again argues, without citation to

26  authority, that the release of Cortisol into the bloodstream constitutes irreparable harm, ECF No.

27  21-1 at 12.  *See also* ECF No. 7 at 3 n.1 (quoting Fed. R. Civ. P. 11).

28

1          For the foregoing reasons, the court concludes plaintiff has not satisfied the

2    irreparable harm requirement for preliminary relief.  *See* Fed. R. Civ. P. 65(b)(1)(A); *Winter*, 555

3    U.S. at 20.

4          B.      Likelihood of Success on the Merits

5          Plaintiff also has not met her burden of showing likelihood of success on the

6    merits.  While plaintiff's legal arguments are not entirely clear, her motion appears to advance

7    five legal theories: (1) her evaluations of John Doe and use of a DSM5 diagnostic code were

8    within the scope of her license as a Licensed Educational Psychologist, *see* ECF No. 21-1 at 13;

9    (2) Dr. Root and the BOP engaged in a conspiracy to retaliate against plaintiff given her

10   testimony adverse to Alta Regional Center, *see id.* at 1, 3; Compl. ¶ 16; (3) the BOP did not

11   provide plaintiff notice and an opportunity to be heard before denying her application for

12   licensure, *see* ECF No. 21-1 at 17–21; (4) the BOP's denial of plaintiff's application under

13   California Business and Professions Code section 489(3)(A) was improper, *see id.* at 6; and

14   (5) after denying her application, the BOP improperly offered plaintiff the hearing procedures

15   required for an applicant, rather than those required for individuals who already have a license,

16   *see id.* at 7.

17         Plaintiff has not demonstrated a likelihood of success on these theories.  With

18   respect to her conspiracy theory, the Complaint and Motion for Temporary Restraining Order

19   provide vague, conclusory allegations, rather than specific facts or evidence suggesting the

20   existence of a conspiracy.  Plaintiff's own declaration simply states that she "believe[s] in [her]

21   heart that the Board of Psychology is complicit in a bizarre scheme of retaliation against [her] by

22   Alta Regional Center and Dr. Cynthia Root," Holcomb Decl. ¶ 12, ECF No. 21-2.

23         Plaintiff has not provided sufficient information for the court to evaluate her

24   remaining theories.  Plaintiff has not provided the letter from the BOP denying her application for

25   licensure.  Nor has she provided evidence regarding the evaluations she conducted on patient

26   John Doe,[3] or evidence regarding the types of evaluations a Licensed Educational Psychologist is

27   ――――――――――――――
          [3] To the extent plaintiff's complaint seeks return of John Doe's files to his parents, the
28   court has a doubt regarding her standing to present such a request.

1  permitted to conduct.  Plaintiff alleges the BOP's denial letter cited California Business and

2  Professions Code section 489(3)(A) as the basis for denial, but such a subsection does not exist.

3  If plaintiff intended to cite section 480(a)(3)(A), that provision provides that a board may deny a

4  license on the grounds that the applicant has "[d]one any act that if done by a licentiate of the

5  business or profession in question, would be grounds for suspension or revocation of license."

6  Cal. Bus. & Prof. Code § 480(a)(3)(A).  Again, plaintiff has not provided specific legal authority

7  and facts showing that any complaint by Dr. Root was baseless.  With respect to plaintiff's claim

8  that she should have had the opportunity to challenge the denial of a license utilizing the

9  procedures available for individuals who already have a form of license, the only support plaintiff

10  provides is a conclusory statement by plaintiff's counsel that plaintiff "WAS a licensed

11  psychologist on August 6, 2015."  Ebert Decl. ¶ 7, ECF No. 21-3 (emphasis in original).

12          Because plaintiff has not met her burden of establishing irreparable harm or

13  likelihood of success on the merits, the court does not address the remaining requirements of the

14  balance of equities and public interest. *See Winter*, 555 U.S. at 20.

15  IV.    CONCLUSION

16          For the foregoing reasons, plaintiff's Motion for Temporary Restraining Order is

17  DENIED.  If plaintiff wishes to seek a preliminary injunction, she may notice a hearing on an

18  available civil law and motion calendar date, in compliance with Local Rule 230.

19          IT IS SO ORDERED.

20   DATED:  November 23, 2015.

21
22
23                                    _____
                                      UNITED STATES DISTRICT JUDGE
24
25
26
27
28

9